IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 13-cr-00411-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  THERON MAXTON,

    Defendant.

_____

# ORDER
_____

This matter is before the Court on defendant Theron Maxton's Request for Compassionate Release Due to Serious Medical Issues and the Covid-19 [Docket No. 360] and Supplement to Pro Se Motion for Compassionate Release [Docket No. 365]. Pursuant to General Order 2020-07, CJA counsel entered an appearance on behalf of Mr. Maxton on July 8, 2020. Docket No. 361. On October 1, 2020, defendant filed his supplement through counsel. Docket No. 365. The government responded on October 19, 2020. Docket No. 369.

## I. BACKGROUND

On January 22, 2015, a jury found Mr. Maxton guilty of the four counts with which he was charged. Docket No. 175-1. Two convictions were for threatening to assault, kidnap, and murder a member of the immediate family of a federal law enforcement officer with intent to impede, intimidate, and interfere with such law enforcement officer and official while engaged in the performance of official duties, and

with intent to retaliate against such official and law enforcement officer on account of the performance of official duties, in violation of 18 U.S.C. §§ 115(a)(1)(A), (b)(4). Docket No. 4; Docket No. 175-1.  The jury also found Mr. Maxton guilty of two counts of threatening to assault, kidnap, and murder a federal law enforcement officer and official with the intent to impede, intimidate, and interfere with such law enforcement officer or official while engaged in the performance of official duties, and with intent to retaliate against such official and law enforcement officer on account of the performance of official duties, in violation of 18 U.S.C. §§ 115(a)(1)(B), (b)(4).  *Id.*

On June 19, 2015, the Court sentenced Mr. Maxton to a total of 100 months imprisonment plus three years of supervised release for the four charges.  Docket No. 289 at 3.  The Court imposed this sentence to run consecutively to two sentences imposed in separate cases by the United States District Court for the District of South Carolina, Case Nos. 89-cr-00305 and 97-cr-00490.  *Id.*  The Tenth Circuit affirmed. Docket No. 339.

Mr. Maxton is currently serving the first District of South Carolina sentence.  The government represents that Mr. Maxton's projected release date for that sentence is February 22, 2022, after which he will serve the second District of South Carolina sentence, with a projected release date of January 14, 2033.  Docket No. 369 at 1. Then, Mr. Maxton will begin his sentence in this case.  *Id.*

Mr. Maxton asks that the Court "conclude that the sentence already served sufficiently serves the purposes of sentencing in light of Mr. Maxton's extraordinary and compelling circumstances, which developed subsequent to the original sentencing." Docket No. 365 at 15.  Mr. Maxton requests that the Court "modify his sentence to

'time-served', for the almost 84 months, as of October 7, 2020, he has served on this case alone, since his indictment herein." *Id.*  Later in Mr. Maxton's motion, he asks for modification of his sentence to time-served as well as a term of supervised release.  *Id.*  Mr. Maxton, however, has yet to begin serving the sentence in this case, which is to run consecutively to the sentence he is currently serving and the sentence he has yet to begin in South Carolina.  Docket No. 289.

## II. ANALYSIS

Section 3582(c)(1)(A) permits a district court to "reduce [a] term of imprisonment" in certain circumstances "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Specifically, a court may order an inmate's release if the court finds that (1) "extraordinary and compelling reasons warrant such a reduction; . . . and that [(2)] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" as set out in 18 U.S.C. § 3553(a). 18 U.S.C. §  3582(c)(1)(A).  The government does not dispute that Mr. Maxton has met the exhaustion requirement.  Docket No. 369 at 1.  Nevertheless, the government argues that Mr. Maxton has not established that extraordinary and compelling reasons support to a sentence reduction and has not met his burden of demonstrating that a reduction of sentence is consistent with the § 3553(a) factors.  Docket No. 369 at 1.

### A.   **Extraordinary and Compelling Reasons Warranting Release**

3

The Sentencing Commission has identified four categories of "extraordinary and compelling" reasons that may warrant a sentence reduction under the First Step Act:

(A)  Medical Condition of the Defendant.–

    (I)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)  The defendant is–

        (I)  suffering from a serious physical or medical condition,

        (II)  suffering from a serious functional or cognitive impairment, or

        (III)  experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  Age of the Defendant.– The defendant (I) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family Circumstances.–

    (I)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)  Other Reasons.– As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.  Mr. Maxton argues that he is entitled to relief under subsections (A), based on his ability to provide self-care, and (D), which allows for release pursuant to extraordinary or compelling reasons, other, or in combination with, those set out in subsections (A)–(C), "[a]s determined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13, cmt. n.1(D); Docket No. 365 at 11.  Mr. Maxton argues that his medical conditions constitute extraordinary and compelling reasons, even absent COVID-19.  Docket No. 365 at 11–12.

The medical evidence that Mr. Maxton has submitted demonstrates that he has a medical history of "right inguinal and umbilical hernia repair, BPH with LUTS, elevated PSA, GERD and schatzki ring, rotator cuff tear/impingement/OA of AC joint mild to moderate DJD of cervical spine, COPD, external hemorrhoids, and renal cyst."  Docket No. 365-1 at 2.  The government explains that "BPH" stands for "benign prostatic hyperplasia"; "LUTS" for "lower urinary tract symptoms"; "PSA" for "prostate specific antigen"; "GERD" for "gastroesophageal reflux disease"; "OA" for "osteoarthritis"; "AC" for "articular cartilage"; "DJD" for "degenerative joint disease"; and "COPD" for "chronic obstructive pulmonary disease."  Docket 369 at 4.

In addition to the medical records that Mr. Maxton provided, he states that he suffers from chronic asthma, Docket No. 365 at 6, and has received inadequate medical care in custody, which "exacerbates the aforementioned infirmities."  *Id.* at 7. In particular, Mr. Maxton states that he was injected with penicillin, which he is allergic to, and suffered anaphylaxis, *id.*, that he had received no treatment or medication for his COPD diagnosis, *id.*, that he has received no treatment for a psychological disorder with which he was diagnosed in 1986 and for which intervention was indicated, *id.* at 8,

5

and that he has received inadequate care for a kidney cyst that likely requires surgical intervention, *id.* at 8–9.  Mr. Maxton also argues that his COPD and asthma put him at an "increased risk of severe illness from COVID-19." *Id.* at 6.  Each of these factors – his health and the Bureau of Prison's inattention to both his medical concerns and the COVID-19 pandemic – "indicates he is deteriorating physical[ly] due to the aging process and his ability to provide self-care within the correctional facility environment continues to diminish."  *Id.* at 12.

The government does not dispute the medical conditions detailed in Mr. Maxton's records at Docket 365-2, but argues that Mr. Maxton has failed to demonstrate extraordinary and compelling reasons that would warrant a reduction in his sentence.  Docket No. 369 at 8.  The government also acknowledges that Mr. Maxton's COPD diagnosis "puts him at an increased risk of severe illness" from COVID-19, "and asthma and hypertension might put him at an increased risk for severe illness from the virus."  *Id.*  Nevertheless, the government argues that Mr. Maxton has not established that his medical conditions fall within one of the categories found at U.S.S.G. § 1B1.13.  *Id.* at 9.  In particular, the government first argues that Mr. Maxton cannot show that he suffers from a "serious physical or medical condition that . . . substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* (citing U.S.S.G. § 1B1.13(A)(ii)(I)).  Second, the government argues that Mr. Maxton has failed to establish that he is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and

6

from which he or she is not expected to recover." *Id.* at 10 (citing U.S.S.G. § 1B1.13(A)(ii)(III)). Third, the government argues that, while Mr. Maxton can show that he is "at least 65 years old," he cannot show that he has served "at least 10 years or 75 percent of his or her term of imprisonment." *Id.* at 11 (citing U.S.S.G. § 1B1.13(B)). He cannot show the latter, the government argues, because he has yet to begin his term of imprisonment in this case.

Courts regularly rely on an inmate's ability to perform activities of daily living ("ADLs") to determine whether the inmate is able to provide self-care. *See, e.g., United States v. Bellamy*, 2019 WL 3340699, at *4 (D. Minn. July 25, 2019) (finding that inmate was eligible for compassionate release where "he need[ed] assistance using the toilet, getting dressed, bathing, transferring to his wheelchair from his bed, using the computer, obtaining meals, doing laundry, and obtaining his medication, among other activities"); *United States v. Handy*, 2020 WL 2041666, at *4 (D. Md. Apr. 28, 2020) (finding that inmate was incapable of providing self-care where the inmate was "always in a wheelchair" when not in his housing unit and "need[ed] help with activities such as breaking up food into small pieces, fetching a meal tray, opening packaging, and clipping toenails due to his right hand being 'completely deformed.'"); *United States v. Korn*, 2020 WL 1808213, at *5-6 (W.D.N.Y. Apr. 9, 2020) (finding that an inmate had failed to demonstrate he had a medical condition precluding him from providing selfcare because the inmate could "walk with a cane, dress, bathe, eat, and perform his other activities of daily living independently"). Mr. Maxton has not demonstrated that he needs substantial assistance to complete his ADLs and, as a result, has not met his burden of demonstrating that he has a medical condition that "substantially diminishes

7

the ability of the defendant to provide self-care within the environment of a correctional facility," as required under both § 1B1.13(A)(ii)(I) and (II).

Mr. Maxton's arguments that the Bureau of Prisons is frustrating his attempts at self-care by withholding medical treatment or by failing to adequately control the spread of COVID-19 are similarly unpersuasive. Mr. Maxton's medical records indicate that he is awaiting an off-site urology appointment for a cystoscopy. Docket No. 365-2 at 1. While Mr. Maxton argues that the delay between the January 2020 ultrasound that revealed the cyst and the September 2020 CT scan demonstrates that he does not receive adequate care within the Bureau of Prisons, Docket No. 370 at 7, Mr. Maxton's medical records indicate that he was examined by a provider in April 2020 and has been prescribed medication for his kidney problems. Docket No. 352-2 at 1. He has also been prescribed painkillers for his orthopedic pain and an inhaler and two additional medications for his COPD. *Id.* at 1–2. In addition, Mr. Maxton's records indicate that he has refused medical treatment on multiple occasions. He refused a colonoscopy in 2018 for rectal bleeding and colon cancer screening, a visit to an off-site "GI specialist" in 2019, and ear lavage in 2020. Docket No. 365-2 at 1, 3.

Further, while Mr. Maxton provides no information on the state of the COVID-19 pandemic at USP Victorville, where he is incarcerated, the Court takes judicial notice that the Bureau of Prisons website indicates that Victorville has four positive cases among inmates and four positive cases among staff. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed November 9, 2020). While the Court acknowledges that the risk of contracting COVID-19 is higher in closed environments such as prisons, the few active COVID-19 cases among the inmate

population means that the risk of Mr. Maxton contracting the disease is relatively low. *See United States v. King*, 2020 WL 5909107, at *4 (S.D. Oct. 6, 2020) (finding that USP Victorville "is engaged in strenuous efforts to protect inmates against the spread of COVID-19," and that the threat of COVID-19 at USP Victorville did "not establish extraordinary and compelling reasons to justify" the defendant's release when there were 13 active cases).

Finally, Mr. Maxton is unable to meet his burden under § 1B1.13, cmt. n.1(B). While Mr. Maxton's age is not in dispute, and while he has served much of his present sentence, Docket No. 365 at 2, the government is correct that he has not served any of the sentence that this Court imposed, and, therefore, Mr. Maxton has not shown that he has served "at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. n.1(B). Mr. Maxton disputes the government's contention that his sentence in this case has yet to begin. Docket No. 370 at 2–4. Mr. Maxton's arguments, however, are unconvincing. The sentence that this Court imposed is to begin once Mr. Maxton completes his sentences in South Carolina, which he has yet to do. Docket No. 289.

Accordingly, Mr. Maxton has not demonstrated that extraordinary and compelling reasons exist warranting compassionate release. 18 U.S.C. § 3582(c)(1)(A).

### B. Section 3553(a) Factors

Even if an inmate has demonstrated that extraordinary and compelling reasons exist warranting release under 18 U.S.C. § 3582(c)(1)(A)(I), the Court must consider whether compassionate release is appropriate in light of the sentencing factors set out in 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Lochmiller*, No. 09-cr-00529-PAB,

2020 WL 4783433, at *2 (D. Colo. July 20, 2020) ("[T]he Court must consider whether the factors outlined in 18 U.S.C. § 3553(a) support" the sentence reduction.); *see also United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) ("Under § 3582(c)(1)(A)(I), a district court may grant a sentence reduction . . . after considering the 18 U.S.C. § 3553(a) factors . . . .") (internal quotations omitted). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrent to criminal conduct, [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). "The Court also considers whether the Defendant is a danger to the safety of any other person in the community." *United States v. Tate*, 2020 WL 37914676, at *5 (C.D. Ill. July 7, 2020) (citing U.S.S.G. § 1B1.13).

Mr. Maxton asserts that the § 3553(a) factors weigh in favor of compassionate release. Docket No. 365 at 14–15. He asks the Court to consider "the most up-to-date picture" of his history and characteristics. *Id.* at 14 (quoting *Pepper v. United States*, 562 U.S. 476, 490 (2011)). Mr. Maxton acknowledges that his "offense and his criminal history qualified him for the serious sentence that this Court originally imposed," but states that his "physical condition following his health decline realistically forecloses a probability of dangerous recidivism." *Id.* at 14. Among other things, Mr. Maxton's "eyesight has weakened," and "he suffers from multiple recurrent hernias, his breathing has deteriorated, and his overall health and well-being has demonstrably declined due to COPD." *Id.* at 14–15. Mr. Maxton states that "[h]aving undergone a very long period

10

of incarceration and due to his physical and mental deterioration, Mr. Maxton no longer poses a danger to the community." *Id.* at 15.

Mr. Maxton also explains that he now "[r]ecogniz[es] the severity of his offenses" and has "expressed deep and sincere remorse for his conduct resulting in his criminal convictions." *Id.* at 11.  He states that he was only twenty-years-old when he was first incarcerated and that "he was suffering from severe and persistent mental illness," but that, in prison, "he has benefitted from some mental health treatment and maturity." *Id.* He now wishes "to be released in order to take initiative in starting a new chapter . . . and pursuing more comprehensive treatment for his mental illness." *Id.*

The government, however, points to the crimes Mr. Maxton committed in this case and, by the nature of the crimes, the danger he would pose to those outside the prison.  Docket 369 at 2.  While an inmate in Colorado, Mr. Maxton wrote three profanity-laced letters threatening the lives of federal officials and their families. *Id.* at 2–3.  The threats were so severe – in part because Mr. Maxton had previously assaulted two prison employees in South Carolina and threatened them with a knife – that one employee quit her job at the prison and another warned his children to be cautious when opening the door to their home.  *Id.* at 3.  When interviewed by the FBI, Mr. Maxton stated that, "if given the opportunity[,] he would try to kill" the prison officials.  *Id.* at 3–4.  Even before these acts in 2012, the government argues that Mr. Maxton's record was full of extraordinary acts of violence.

The Court finds that, even if he meets the § 3582(c)(1)(A) factors for demonstrating extraordinary and compelling reasons to be released, Mr. Maxton has failed to meet his burden of demonstrating a reduction in sentence is appropriate under

11

§ 3553(a).  While Mr. Maxton attempts to assure the Court that he has learned his lessons after having been incarcerated for 30 years, the crimes Mr. Maxton committed in this case occurred only eight years ago, when Mr. Maxton was 57 years old.  Further, Mr. Maxton's statement that he would try to kill prison officials if given the opportunity does not inspire confidence that Mr. Maxton will not re-offend.  Mr. Maxton reasons that the risk he will commit additional crimes is mitigated by his medical conditions, including his weakening eyesight, hernias, and COPD.  Docket 365 at 14.  However, while the presentence report and Mr. Maxton's medical records detail his COPD and a history of hernias, neither document mentions Mr. Maxton's eyesight.  Further, he had hernia repair surgeries in 1965, 1982, and 1996, indicating that his hernias did not prevented him from committing the crimes for which he is incarcerated in South Carolina or the ones for which he was sentenced in Colorado.  In addition, the Court finds that Mr. Maxton would be a danger to himself or others if he were released, given that he has used other people to assist him in committing crimes.  For example, in the underlying offense, he solicited the assistance of a former fellow inmate to rape and kill federal officials and their families, and later reiterated his intentions to an FBI special agent, stating that, if given the opportunity, he would follow through on his threats.  Docket 212 at 5–6, ¶¶ 9–15.  Finally, Mr. Maxton has not served any of his 100-month sentence, which does not sufficiently reflect the gravity of his offenses or promote respect for the law.  *See United States v. Woods*, 2020 WL 3452984, at *3 (S.D. Miss. June 24, 2020) ("Further, Woods has only served about a fourth of her sentence. . . . The Court finds that, under these circumstances, a reduction in Woods's sentence would not reflect the gravity of the offense."); *United States v. Schwab*, 2020 WL

12

3452651, at *1 (E.D. La. June 24, 2020) ("The Court finds that defendant's sentence would not 'reflect the seriousness of the offense' were he released after serving eighty-two months, or about thirty-four percent, of his term of imprisonment.").

Having determined that Mr. Maxton has failed to establish that a reduction in sentence is appropriate in light of the § 3553(a) factors, the Court will deny the motion for compassionate release.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Request for Compassionate Release [Docket No. 360], construed as a motion for compassionate release and as supplemented by Docket No. 365, is **DENIED**.

DATED November 9, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge